## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Maria De Jesus Harber, ) | |
| ) | |
| Plaintiff, ) | **ORDER GRANTING MOTION FOR** |
| ) | **ATTORNEY FEES PURSUANT TO** |
| vs. ) | **42 U.S.C. § 406(b)(1)** |
| ) | |
| Kiko Kijakazi, Acting Commissioner ) | |
| of the Social Security Administration, ) | Case No. 1:18-cv-201 |
| ) | |
| Defendant. ) | |

Before the court is a motion for an award of attorney fees pursuant to 42 U.S.C. § 406(b)(1) that was filed by Plaintiff's counsel (hereafter referred to as the "Petitioner"). (Doc. No. 35). For the reasons that follow, the motion is granted.

## I.  BACKGROUND

Plaintiff initiated this action by Complaint on October 10, 2018, seeking judicial review of the Social Security Commissioner's denial of her application for disability insurance benefits ("DIB"). (Doc. No. 1). The court, pursuant to an unopposed motion filed by the Commissioner after the parties had filed their respective motions for summary judgment, issued an order on May 25, 2021, that reversed the Commissioner's judgment and remanded this matter for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). (Doc. Nos. 19, 20, 26, 27). On September 1, 2021, the court issued an order awarding Plaintiff $3,000.00 for reasonable attorney's fees and $16.26 in expenses[1] under the Equal Access to Justice Act ("EAJA"). (Doc. No.

---

[1] It cost $16.26 to serve the Commissioner with the Summons and Complaint via certified mail. (Doc. Nos. and 32 and 32-5).

1

34).²

Upon remand, following further administrative proceedings, the Commissioner determined that Plaintiff was entitled to monthly DIB beginning in December 2015. The Social Security Administration's ("SSA") practice is to withhold 25% of the total past due benefits to pay an approved attorney's fee. Here, the SSA withheld $25,172.25 from Plaintiff's past due benefits. (Doc. No. 35-5). If the amount withheld represents 25% of the Plaintiff's past-due benefits, then the Plaintiff's past due-benefits as of the time of the award were $110,689.00.

The SSA paid Plaintiff's hearing level representation $6,000.00 from the 25% of her past due benefits it had withheld. (Id.). It has continued to withhold the remaining $19,172.25 pending authorization of Petitioner's fees for his representation of Plaintiff before this court. (Id.).

Petitioner has a contingency fee agreement with Plaintiff. (Doc. No. 35–2). This agreement provides in relevant that part that, in the event Plaintiff's representation during remand proceedings did not collect the full 25% of her past due benefits withheld by the SSA, Plaintiff agreed that Petitioner could endeavor to collect the balance of that 25% as his fee for representing her in court. (Id.)

On November 1, 2022, Petitioner filed a request for an award of $19,172.25 for attorney fees pursuant to 42 U.S.C. § 406(b)(1). (Doc No. 35). This amount is based on 31.5 hours of work (paralegal and attorney) at an effective hourly rate of $608.64. (Doc. No. 35-1). In making his request, Petitioner acknowledges that he cannot keep both the EAJA fees and fees under 42 U.S.C. § 406(b)(1). (Id.). He further advises that Plaintiff is receiving a copy of his request.

---

² The court also awarded $400.00 for reimbursement for costs, which were payable by the Department of Justice's Judgement Fund. (Doc. No. 34).

On November 8, 2022, the Commissioner filed a response to Petitioner's request for attorney fees. (Doc. No. 36). It outlines the law governing fee awards. It takes no position as to whether Petitioner's fee request in this case is reasonable. Rather it asked that, when awarding fees under 42 U.S.C. § 4069b), the court also order Petitioner to reimburse the amount previously awarded in EAJA fees.

## II.   DISCUSSION

### A.   Governing Law

Pursuant to 42 U.S.C. § 406(b), the court may award fees to a successful claimant's counsel for work performed before the court in a "reasonable" amount, not to exceed 25% of the total past-due benefits awarded to the claimant. These fees are awarded from the past-due benefits awarded to the claimant and are withheld from the claimant by the Commissioner. 42 U.S.C. § 406(b). The court must independently determine whether an attorney fee in this amount is reasonable in proportion to the services rendered. See Gisbrecht v. Barnhart, 535 U.S. 789, 807 (2002).

The use of contingent-fee agreements is a common practice in Social Security cases. Wilkinson v. Saul, No. 1-17-CV-147, 2020 WL 7061747, at *4 (D.N.D. Dec. 1, 2020) (citing Gisbrecht, 535 U.S. at 804). In order to give primacy to the contingent-fee agreement, the court starts with the agreement and then tests it for reasonableness, with the burden of demonstrating reasonableness in any particular case being upon the attorney seeking the fees. See id. at *5. In addition to the contingent-fee agreement, other factors the court can consider when determining reasonableness include: (1) the character of the representation; (2) the results achieved; (3) whether the attorney engaged in dilatory conduct for the purpose of increasing past-due benefits and thereby

the size of the potential attorney-fee award; and (4) whether the benefits are large in comparison to the time counsel spent on the case, thereby resulting in a "windfall" to the attorney. See id. (citing Gisbrecht, 535 U.S. at 807-808).

As noted above, Plaintiff received an award of attorney's fees under the EAJA. Petitioner cannot keep these fees and fees he received pursuant to § 406(b). "Congress harmonized fees payable by the Government under EAJA with fees payable under § 406(b) out of the claimant's past-due Social Security benefits in this manner: Fee awards may be made under both prescriptions, but the claimant's attorney must 'refun[d] to the claimant the amount of the smaller fee.'" Gisbrecht, 535 U.S. at 796 (quoting Act of Aug. 5, 1985, Pub. L. 99–80, § 3, 99 Stat. 186).

**B.    Review of Fee Request**

  **1.    Contingent Fee Agreement**

Petitioner has submitted a copy of the contingent-fee agreement that allows him to recover 25% of past-due benefits awarded to Plaintiff, the most permitted by § 406(b)(1). The court must give deference to the contingent-fee agreement unless there is a very good reason not to—albeit with the burden on Petitioner to demonstrate reasonableness. To do otherwise would upset the incentives that Congress put in place to ensure that a broad base of claimants obtain representation in Social Security cases— not just those with the best cases. See Gisbrecht, 535 U.S. at 800–08 (discussing Congress's historical reliance upon the contingent fee system to ensure that claimants are able to obtain representation and choice of 25% of past due benefits as an appropriate ceiling for fees); see also Crawford v. Astrue, 586 F.3d 1142, 1147–49 (9th Cir. 2009) (employing a de facto lodestar approach in reviewing fee requests and giving short-shrift to the contingent-fee agreement is contrary to Gisbrecht and "works to the disadvantage of SSDI claimants who need

counsel to recover any past-due benefits at all."); see, e.g., Baron v. Astrue, 311 F. Supp.3d 633, 637 (S.D.N.Y. 2018) (discussing the deference due the contingent-fee agreement in light of Gisbrecht and stating that "a reduction in the agreed-upon contingency amount should not be made lightly.").

Before moving on, some discussion of risk is appropriate. In "cases where the error on the part of the Commissoner is so clear that there is no real risk of loss, it may be appropriate to declare the contingent-fee agreement per se unreasonable and award fees on a lodestar approach without giving consideration to the fee agreement. There may also be cases where risk of loss is perceived to be somewhat greater but, after an appeal of the Commissioner's final decision is filed in federal court, the Commissioner stipulates to remand before any substantial amount of work is done. In these cases, some downward adjustment of the fee request may be appropriate depending upon the amounts involved.

Here, the Commissioner did stipulate to a remand. However, it should be noted that the Commissioner did so after the Petitioner had done the lions share of his work, that is, after he had prepared and filed both Plaintiff's motion for summary judgment and Plaintiff's response to the Commissioner's motion for summary judgment. It should also be noted that the court did not remand for an award of benefits but for further hearing. Thus, there was a possibility that, with more information and a better explanation by the ALJ, a determination of no eligibility for benefits could be sustained. Consequently, no adjustment is warranted in this case based on risk to the extent it may be a relevant consideration.

      2.      The <u>Gisbrecht</u> factors

          a.      **Character of the representation**

The character of Petitioner's representation could encompass quite a few things, some of which may overlap with other factors. Here, the court focuses on the apparent quality of the representation.

Petitioner's briefing perhaps persuaded the Commissioner that remand was appropriate. In any event, it does not appear at first blush that an inappropriate number of hours were spent on this case. Finally, Petitioner did seek an EAJA fee award. This "softens the blow" in terms of the burden placed upon Plaintiff with respect to fees. Thus, there is no reason to adjust downward Petitioner's fee request based upon the character of his representation.

          b.      **Results Achieved**

There is no apparent reason to warrant a downward adjustment of requested fees based on the results achieved.

          c.      **Dilatory Conduct**

There is no evidence that Petitioner engaged in dilatory conduct—whether purposely for increasing past-due benefits so there could be a higher fee award or as the result of inattention or other negligent handling.

          d.      **"Windfall"**

There are two obvious variables—the amount of time spent by Petitioner and the total amount of past-due benefits awarded to Plaintiff–when considering whether Petitioner's fee request would amount to a windfall. With respect to time, this is not a case where a nominal number of hours was spent. However, as noted above, the number of hours expended by Petitioner in this case

is not at first blush unreasonable.

Turning next to the award in this case, there are two things that contributed to its size. First there was the passage of time, which was a primary concern of Congress in terms of contributing to unreasonable fees. In considering the passage of time, some courts focus primarily (if not solely) upon whether counsel caused or contributed to the delay. See, e.g., Jeter v. Astrue, 622 F.3d 371, 380 n.10 (5th Cir. 2010) ("This sort of reduction, however, is limited to instances where the attorney himself unnecessarily delayed the proceedings. Nothing in Gisbrecht supports reducing the attorney's fee merely because the Administration or the court acted to delay or extend the time line of the proceedings."); Thomas v. Colvin, No. 1:11-cv-01291, 2015 WL 1529331, at **2 (E.D. Cal. Apr. 3, 2013) ("Thomas") (noting only that counsel was not engaged in any dilatory conduct resulting in delay in a case where the past-due benefits totaled $180,866.90 and counsel sought fees of $44,603.50 representing 25% of that amount). Other courts look at the passage of time more broadly and make downward adjustments even when a delay was not caused by counsel—sometimes distinguishing between delay that is considered typical from that which is perceived to be beyond the norm. See, e.g., Gossett v. Saul, No. 4:14-cv-1696, 2020 WL 3440480, at *7 (N.D. Ala. June 23, 2020) (reducing fee request in part due to the lengthy delay in calculating benefits following a benefits award that the court stated was not the product of counsel's work); Ringel v. Comm'r Soc. Sec., 295 F. Supp. 3d 816, 834–36 (S.D. Ohio 2018) ("Ringel") (concluding that ten years of administrative delay warranted a downward adjustment and suggesting that anything more than four years requires scrutiny); Ashing v. Astrue, 798 F. Supp. 2d 1143, 1146–47 (C.D. Cal. 2011) ("[L]ong delay in receipt of benefits and the consequent accrual of benefits, brings a windfall to the attorney's award regardless of whether the attorney is responsible for the delay, or as here, the

responsibility is the fault of the Commissioner.").

Still other courts take delay into account by looking at the result in terms of what is the resulting de facto hourly rate and also in some cases to how that de facto hourly rate compares to counsel's non-contingent fee hourly rate or some equivalent. See, e.g., Willis, 2014 WL 2589259, at **4–7 (reducing fee request in part to account for delay, even though not the fault of counsel, after noting that the case was similar to other cases where courts found requested fees to be excessive because the de facto hourly rate was more than four times the standard non-contingent fee rate); Williams v. Colvin, No. 2:10-cv-04103, 2014 WL 4771716 (W.D. Mo. Sept. 24, 2014) (noting the significant administrative delays and concluding that a fee request of $14,734.25 that amounted to a de facto hourly rate of $535.79 was unreasonable even though the delay was not the fault of counsel).

Here, the court is disinclined to make adjustments due to the passage of time as it is not readily apparent that delays in this case were far outside the norm, much less that Petitioner caused or contributed to any delay. The court is also disinclined to place significant reliance on the multiple of the de facto hourly rate to an assumed non-contingent fee rate in determining whether there has been a windfall in this case. See Wilkinson, No. 1-17-CV-147, 2020 WL 7061747, at *10. The court is mindful of the historical use of contingent-fee agreements in cases such as this, Congress' decision to essentially cap fees at 25% of past-due benefits, and the primacy given to contingent-fee agreements. The court also appreciates the difficulties in determining an appropriate hourly fee rate for cases such as this one. See id. (discussing, among other things, considerations unique to this district that may warrant or require a higher hourly rate than in other districts along with courts' general reluctance to engage in "satellite litigation" regarding the prevailing non-contingent fee rates

in the community).

Turning to the size of the fee request and Petitioner's de facto hourly rate, the court finds them reasonable to proportion of work performed and not tantamount to a windfall in this case. See id. at * 11 (discussing other courts approval of large fee requests and the challenges of maintaining a viable Social Security practice in this district when approving a fee request with a de facto hourly rate in excess of $1,000.00 per hour).

### III. CONCLUSION

Pursuant to the foregoing, it is hereby **ORDERED** as follows:

1. Petitioner's motion for an award of attorney fees pursuant to 42 U.S.C. § 406(b)(1) (Doc. No. 35) is **GRANTED**. Petitioner is awarded attorney's fees pursuant to 42 U.S.C. § 406(b) in the amount of $19,172.25;

2. The attorney's fees approved above shall be paid to Petitioner from the percentage of Plaintiff's past-due benefits being withheld by the SSA for payment of attorney fees;

3. Upon Petitioner's receipt of payment of the above amount by SSA, Petitioner shall promptly refund to Plaintiff the $3,000.00 in attorney fees previously awarded under the EAJA.

Dated this 5th day of December, 2022.

*/s/ Clare R. Hochhalter*  
Clare R. Hochhalter, Magistrate Judge  
United States District Court